E-FILED
Friday, 06 March, 2009  02:22:02 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

GREGORY A. WHITE,

      Plaintiff,

                                             07-3026

TARRY WILLIAMS,
KURFMANN, MILLER, SANDERS
STEINBAKER, MONOHAN,
CLAYTON, and ADAMS,

      Defendants.

## Order

This case proceeds against Defendants Steinbaker, Williams, Kurfmann, Miller, Clayton and Sanders on federal claims of excessive force, unconstitutional conditions of confinement, and punishment without procedural due process. The defendants have filed a motion for summary judgment.

## Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).

## Facts[1]

---

[1]The court has not considered the plaintiff's partial deposition attached to the defendants' motion. The court generally requires the entire deposition to be filed in order for it to be considered. This allows the court to put statements into context and allows the indigent plaintiff a chance for rebuttal.

Many of these facts are adopted verbatim from the defendants' proposed facts, to the extent not disputed.

1. Plaintiff was a resident civilly committed within the Rushville TDF for all dates referred to in his Complaint.

2. Defendants were employees of the Rushville TDF for all dates referred to in Plaintiff's Complaint.

3. On September 7[2], 2006, Plaintiff was scheduled to leave the Rushville TDF on a medical furlough.

4. Defendants assert that, while they were attempting to apply restraints to the Plaintiff, Plaintiff refused to comply with orders and became aggressive and combative toward staff. Plaintiff disputes this, asserting that he was not aggressive or combative, but that he only refused to get down on his knees on a concrete slab to cuff up, because he has bad knees. Plaintiff maintains that the defendants did not follow their own procedures, which require them to use verbal and other non-forceful techniques to in response to acting out behavior before they use force. Plaintiff also maintains that he was doing nothing to justify the use of any force.

5. Plaintiff was taken to the ground and restrained. He was taken to the health care unit. The defendants assert the plaintiff continued to be combative, but the plaintiff denies this.

6. As a result of the Plaintiff's continued aggressiveness, Mr. McAdory (who is not a defendant) ordered that Plaintiff be taken out of the Health Care Unit and placed on Temporary Special Management status.

7. Defendants assert that Plaintiff suffered only a small abrasion on his head from the incident, but Plaintiff asserts that he suffered "numerous cuts, scrapes, abrasions, swelling, numbness tingling, loss of feeling to his hands, wrists, ears, forehead, shoulder, neck, and back pain." (D/e 46, p. 6). Plaintiff also asserts that he had to have surgery on both wrists and hands due to nerve damage cause by the defendants.

8. The plaintiff's medical notes from September 1, 2006, indicate that the plaintiff was back from a writ and had "redness and swelling noted to bilat hands/wrist, swelling up appox [sic] 21/2 in. up forearms." The plaintiff's medical notes from September 7, 2006 record a 3 cm, slightly swollen abrasion above the plaintiff's right eye, two scratches to his left scapula **look up**, 3 and 4 cm, some dried blood behind his right ear, "pink/red ring around bilat wrist", and

---

[2]The medical notes dated September 1, 2006, indicate that the plaintiff was back from a writ and had "redness and swelling noted to bilat hands/wrist, swelling up appox [sic] 21/2 in. up forearms." Thus, parties, however, seem to maintain that the incident occurred on September 7, 2006.

noted his complaints of numbness in his hands and pain in his shoulders, neck and back.  The medical notes from September 9, 2006, show that the plaintiff was still complaining of "numbness, tingling, loss of feeling" in his hands and wrist.  A small amount of swelling was noted to the left wrist.

9.  The plaintiff had x-rays, which showed no new injuries.  A physician's report dated September 12, 2006, states that the plaintiff had reporting injury his right shoulder, neck and back in an altercation in 2003, and had "intermittent ulnar sensory nerve symptoms" since another altercation in May 2005 in which he fractured his right finger.  The report found nothing specific on neurological examination, but recommended a nerve conduction study.

10.  The plaintiff's medical notes show that he had surgery for carpal tunnel in April 2008.

11. According to the handbook, residents are assigned to Special Management Status whenever it appears they are a risk to injure others, to protect them from being injured, or when facing criminal investigations and possible charges.

12. The need to maintain a resident in Special Status is reviewed every 48 hours (excluding weekends and holidays), and residents are assigned to other statuses when they are no longer at risk of injuring others, damaging property, or the criminal charges have been resolved.

13. The review of a resident's need to be maintained on Special Status is conducted by the Behavioral Committee.

14. Residents in Special Management Status are permitted personal property as allowed and ordered by the Program Director. (59 Ill. Admin. Code §299.700; Defendants' Exhibit C). The plaintiff asserts that he was placed on special management status with no toilet paper, bed linens, reading/writing materials, smoking material or legal work.  He asserts that he was not let out of the cell for anything, including a shower, fresh air or exercise.

15. Residents who have been assigned to Special Management Status will be assigned to Close Status for up to 30 days before they can progress to General Status.

16. Residents are assigned to Close Status for observation of their ability to successfully reintegrate.

17. Residents on Close Status are afforded all the same privileges as residents on General Status except: (1) curfew is 9:30 p.m. instead of 10:00 p.m.; (2) visits are one hour instead of two hours; (3) residents on General Status can attend on-unit special events; (4) residents on General Status may use the resident library, exercise room, and recreation yard during scheduled hours; and (5) residents on Close Status are not allowed possession of their electronics. (Defendants' Exhibit B, pg. 3-4, 37-39).

3

18. Plaintiff was placed on Special Management Status from September 7, 2006 until September 11, 2006, following his review by the Behavioral Committee.

19. Following the Plaintiff's appearance in front of the Behavioral Committee, Plaintiff was placed on Close Status for 30 days.  Plaintiff asserts that he was also found guilty of creating a disturbance which disrupted the safety of the facility, but there is no such rule listed in the rule book.  The plaintiff also says he was not given notice to appear before the committee.  He asserts that the incident report was for refusing to comply with the medical furlough process, not for creating a disturbance.  He also asserts that Defendant Kurfman, who was involved in the alleged excessive force, sat in on the hearing and helped find the plaintiff guilty.

20. Plaintiff's allegation against Defendant Chris Clayton is that he failed to conduct an investigation into the alleged use of excessive force, failed to save the surveillance tape, and failed to assist Plaintiff in filing criminal charges. Plaintiff does not claim that Defendant Clayton had any involvement in the alleged use of excessive force, the conditions of his confinement following the September 7, 2006, incident, or the enforcement of punishment in violation of due process.

21. Plaintiff's allegations against Defendant Darrell Sanders are that he failed to conduct an investigation into the alleged use of excessive force; and failed to protect him because he was the security director and responsible for the safety of the residents.  Plaintiff does not claim that Defendant Sanders had any involvement in the alleged use of excessive force, the conditions of his confinement following the September 7, 2006, incident, or the enforcement of punishment in violation of due process.  Plaintiff admits that Defendant Sanders was not present at the Rushville TDF at the time of the alleged use of excessive force.  Plaintiff asserts that Sanders knew about his security guards pattern and practice of assaulting residents and failed to do anything.

*Analysis*

*I.  Defendants Clayton and Sanders: Personal Responsibility*

There is no claim Defendant Clayton because he was not involved in the excessive force or ensuing events.  He was only notified after the fact.  "Only persons who cause or participate in the violations are responsible."  *George v. Smith,* 507 F.3d 605, 609 (7th Cir. 2007).  The plaintiff says the he wrote to Clayton, who refused his pleas to investigate the incident, take corrective action against the officers, and preserve the video recording of the event.  Clayton's refusal to investigate and take action against the officers is not a constitutional violation.  The constitution does not require him to take these actions.  Additionally, the officers had already filed incident reports depicting the plaintiff as combative and aggressive, justifying the use of force.  Clayton did not violate the constitution by believing the officers' version over the plaintiff's.

For the same reasons, there is no claim against Defendant Sanders.  Sanders was not there

4

when the excessive force occurred, nor was he involved in any of the subsequent events. Sanders cannot be held liable under section 1983 for his employee's unconstitutional conduct just because Sanders is in charge. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001)(no respondeat superior liability for constitutional violations). The plaintiff asserts that Sanders knew his officers routinely used excessive force, attaching a deposition from Sanders in a prior case. The deposition does not establish that Sanders was aware of any systemic problem of excessive force by his officers, nor is there evidence on this record to infer that a systemic problem existed.

*II. Defendants Williams, Kurfman, Miller and Steinbaker: Personal responsibility for conditions of confinement in special management*

It is undisputed the McAdory, who is not a defendant, ordered that the plaintiff be put in temporary special management. The defendants assert that, under the rules of the facility, they had no authority to determine what property the plaintiff was allowed to have with him. That decision was up to McAdory.

However, there are no affidavits from the defendants or from McAdory. Additionally, the court agrees with the plaintiff that it seems a stretch the McAdory would order the plaintiff confined without toilet paper, bed sheets or access to a shower for four days. On this record, there is no evidence either way on who was responsible for these conditions. It is not clear either if the conditions (besides the lack of toilet paper) were objectively serious enough to even implicate the constitution, given their short duration. However, it is possible that the conditions were imposed for the purpose of punishment without due process. Given the lack of record, this claim remains in. If the defendants had nothing to do with it, they can testify so at the trial.

*III. Defendants Williams, Kurfman, Miller and Steinbaker: Personal responsibility for placement in close status for 30 days and finding of major rule violation*

It is clear that Defendant Kurfman was the only defendant involved in the committee's disciplinary hearing, which resulted in a finding that the plaintiff had violated a major rule and which resulted in the plaintiff receiving 30 days on "close status."   Accordingly, Defendants Kurfman, Miller and Steinbaker are dismissed from the procedural due process claim.

*IV. Procedural Due Process Claim*

The plaintiff has no procedural due process claim against these defendants based on his placement in special management for 4 days, since McAdory made that decision.

As for "close status," the defendants point out that it is not much more restrictive than general status. That may be, but a reasonable inference does arise that it amounted to "punishment," since close status does not include the amenities and opportunities of general status, and since the plaintiff was found guilty of a major rule violation. At this point the court cannot conclude that the plaintiff had no procedural due process rights before being found guilty

of a major rule violation and placed in close status.  It is true that treatment decisions are accorded professional judgment deference, but here it is not clear what sort of professional determinations were made.  There are no affidavits from any of the committee members explaining the basis for their decision.  It is also not clear to the court that the professional judgment standard supplants the need for procedural due process before punishment.

Thus, the court assumes that the plaintiff was entitled to procedural due process protections.  The plaintiff alleges that he received no notice of the accusations against him, and thus no meaningful opportunity to prepare his defense.  Additionally, he asserts that Defendant Kurfman, who was involved in the excessive force incident, was one of the decisionmakers.  Arguably, then, the decisionmakers were not neutral.  At this point, the claim remains in against Defendant Kurfman.

In light of the factual questions remaining on the record, a decision on qualified immunity on this claim cannot be made confidently.  *Hinnen v. Kelly*, 992 F2d 140, 142-43 (7th Cir. 1993)(qualified immunity is a fact-specific analysis).  Kurman may renew his argument on qualified immunity.

*V.  Excessive Force*

The defendants do not move for summary judgment on the excessive force claim, a wise move since there is enough here to create a triable factual dispute.

The court does want to point out, though, that the plaintiff's cite to DHS procedure and state law does not determine the excessive force standard.   "A state's or local government's failure to follow its own procedures does not necessarily violate due process." *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir.1993) ("a violation of state law ... is not a denial of due process, even if the state law confers a procedural right"); *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006), *quoting Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir.2003)(  "[T]his court has consistently held that '42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . .  departmental regulations and police practices.").  Internal directives do not inform the Constitutional analysis.  *Thompson*, 472 F.3d 444 (7th Cir. 2006)(upholding district court's exclusion from trial of general police order regarding use of force as irrelevant and prejudicial to Fourth Amendment inquiry into reasonableness of force used on arrest).

IT IS THEREFORE ORDERED:

1) Defendants' motion for summary judgment is granted in part and denied in part (d/e 44).  Defendants Clayton and Sanders are dismissed.  The procedural due process claims against Defendants Miller, Williams and Steinbaker are dismissed.  The motion is otherwise denied.  Within 90 days, Kurfman may renew his argument on the qualified immunity for the procedural due process claim if he desires.

2) Remaining for trial are the following claims: 1) excessive force claim against Miller, Williams, Steinbaker and Kurfman; 2) conditions of confinement claim against Miller, Williams, Steinbaker and Kurfman; and, 3) procedural due process claim against Kurfman.

3) The final pretrial conference is scheduled for January 13, 2010 at 1:30 p.m. by video conference.  The proposed final pretrial order is due January 1, 2010.

4) The jury trial is scheduled for January 25, 2010 at 9:00 a.m.

Entered this 6th Day of March, 2009.


**s\Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE